UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE ALMANZAR, *individually and on behalf of others similarly situated*,

Plaintiff,

-against-

1342 ST. NICHOLAS AVENUE RESTAURANT CORP. (d/b/a CAPRI RESTAURANT), and PIPE RODRIGUEZ,

Defendants.

14CV7850 (VEC) (DF)

**REPORT AND RECOMMENDATION**

---

**TO THE HONORABLE VALERIE E. CAPRONI, U.S.D.J.:**

On September 29, 2014, plaintiff Jose Almanzar ("Plaintiff"), purportedly on behalf of himself and others similarly situated, commenced this putative collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL"), Sections 190 *et. seq.* and Sections 650 *et seq.*, to recover unpaid wages, liquidated and statutory damages, prejudgment interest, and attorneys' fees and costs. Although the original Complaint named four defendants, the claims against two of those defendants – Manuel Vidal ("Vidal") and Jacinto Diaz ("Diaz") – were eventually dismissed (Dkts. 24, 69), leaving only two remaining defendants – 1342 St. Nicholas Avenue Restaurant Corp. d/b/a Capri Restaurant ("Capri" or the "Restaurant") and Pipe Rodriguez ("Rodriguez"). After these two remaining defendants (herein, "Defendants") failed to move, answer, or otherwise respond to an Amended Complaint filed by Plaintiff, the Honorable Valerie E. Caproni, U.S.D.J., entered a default judgment against them in Plaintiff's favor and referred this matter to this Court to conduct an inquest concerning Plaintiff's damages. (Dkts. 71, 72.)

For the reasons that follow, I recommend that Defendants be held jointly and severally liable to Plaintiff for (1) damages in the amount of $48,283, representing (a) $21,641.50 in

unpaid wages, including minimum wages and overtime, as adjusted for the amounts Plaintiff was required to expend for purchasing "tools of the trade," (b) $21,641.50 in liquidated damages under state law, and (c) $5,000.00 in statutory damages under state law; (2) prejudgment interest in the amount of $4,557.17, plus additional prejudgment interest to be calculated by the Clerk of Court from March 9, 2016 (the date of Plaintiff's inquest filing) to the date of entry of final judgment; and (3) attorneys' fees and costs in the amounts of $7,266.25 and $400.00, respectively.

## BACKGROUND

### A.   Factual Background

Given Defendants' default, the well-pleaded allegations contained in the Amended Complaint, dated September 1, 2015 ("Am. Compl.") (Dkt. 43), as summarized below, are deemed to be true, except for those allegations relating to damages. (*See* Discussion *infra*, at Section I(A); *see also, e.g., Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011).) The facts included herein are also taken from Plaintiff's [Revised] Proposed Findings of Fact and Conclusions of Law (Dkt. 75),[1] which rely not only on the Amended Complaint, but also on a Declaration submitted by Plaintiff (Dkt. 75-2).

Plaintiff has pleaded that, from approximately December 2012 to September 28, 2014, he was employed as both a grill worker and "ostensibly" as a delivery worker[2] at Capri, a

---

[1] As discussed further below (*see* Procedural History, *infra*), Plaintiff made two submissions, both titled "Plaintiff's Proposed Findings of Fact and Conclusions of Law" (*see* Dkts. 74, 75), but this Court understands the second of those submissions to have slightly revised the first, and therefore considers only the second one here (Dkt. 75), referring to it as Plaintiff's "Revised Proposed Findings."

[2] Plaintiff alleges that, "as a delivery worker, he was required to spend several hours each day performing non-tipped duties unrelated to deliveries, including but not limited to sweeping and mopping, carrying down deliveries and stocking them in the basement, twisting and tying up card board boxes, bringing up food for the cooks, cutting vegetables, peeling vegetables and

Dominican restaurant owned in part by Rodriguez, and located at 1342 St. Nicholas Avenue in Manhattan. (*See* Am. Compl. ¶¶ 2, 5, 42.)[3] Plaintiff claims that he was deprived of statutorily required minimum-wage and overtime pay by Capri, as well as by Rodriguez himself, who, according to Plaintiff, maintained the authority to hire, fire, compensate, and determine the schedules of employees. (*See id.* ¶¶ 6, 23-25; *see also* Revised Proposed Findings ¶¶ 4-7, 20.)

Plaintiff more particularly alleges that, during the period of his employment, he consistently worked, without break periods, (1) a 10-hour shift, four days per week, as a delivery worker, for which he was paid $40.00 per day, as well as (2) a 9-hour shift, two days per week, as a grill worker, for which he was paid $58.00 per day. (Am. Compl. ¶¶ 48, 50.) In total, Plaintiff thus contends that he worked 58 hours per week (*i.e.*, 40 hours as a delivery worker, plus 18 hours as a grill worker), for which he was paid a weekly salary of $276.00 per week (*i.e.*, $160.00 as a delivery worker, plus $116.00 as a grill worker). Based on this weekly salary, Plaintiff asserts that, throughout his employment, Defendants paid him approximately $6.90 per hour[4] and never paid him "time and a half" for hours worked in excess of 40 hours per week. (*Id.* ¶¶ 6, 13, 50; *see also* Declaration of Jose Almanzar in Support of Plaintiff's Motion for Default Judgment, dated Dec. 15, 2015 ("Almanzar Decl.") (Dkt 75-2) ¶ 12.)

---

plantains, seasoning chicken, peeling and storing shrimp in plastic containers, sweeping and hosing the sidewalk, and taking out the garbage." (Am. Compl. ¶ 5.)

[3] In order to establish FLSA coverage (which is not at issue on this inquest), Plaintiff alleges that, in all years that Defendants employed him, Capri had daily sales "that would lead to a gross volume of sales of over $500,000 annually" and "directly engaged in interstate commerce," due to the fact that the Restaurant used "numerous items . . . such as steaks and plantains" on a daily basis that "were produced outside of the State of New York." (Revised Proposed Findings ¶ 11; *see also* Am. Compl. ¶ 39.)

[4] This hourly rate is derived by making the assumption that Plaintiff's weekly pay of $276.00 was intended to cover 40 hours of work. (*See* Discussion, *infra*, at Section II(A).)

Plaintiff additionally alleges that Defendants required him to purchase so-called "tools of the trade" – in particular, two bicycles, a helmet, a bicycle chain, and a lock – for approximately $875.00. (Am. Compl. ¶ 60; Almanzar Decl. ¶ 15.)

Plaintiff maintains that, for the duration of his employment, Defendants paid him his wages in cash, and in doing so, never provided him with an accurate statement of his wages or any notice in English or in Spanish (Plaintiff's primary language) regarding his pay rate, his regular pay day, or any other information required under New York law. (Am. Compl. ¶¶ 56, 58.) Plaintiff also asserts that he was "never notified by Defendants that his tips would be included as an offset for wages," and that "a[t] no time did Defendants inform their employees . . . that they had reduced their hourly wages by a tip allowance." (Id. ¶¶ 54, 63.) According to Plaintiff, Defendants failed to post or otherwise provide notices to Plaintiff "regarding overtime and wages under the FLSA and NYLL." (Id. ¶ 59.) Moreover, Plaintiff contends that Defendants failed to track the amount of time that Plaintiff worked, either by requiring him to document his time or by utilizing sign-in sheets or punch cards. (Id. ¶ 57.)

## B.   Procedural History

As noted above, Plaintiff commenced this action by filing a Complaint on September 29, 2014. (Dkt. 1.) Plaintiff's Amended Complaint was filed approximately a year later, on September 1, 2015. (Dkt. 43; *see also* Dkt. 37 (granting leave to amend).)  When Defendants failed to respond to the Amended Complaint, the Clerk of Court issued certificates of default against Capri and Rodriguez on December 23, 2015. (Dkts. 65, 66.)

The Court entered judgment against Capri and Rodriguez on February 1, 2016. (Dkt. 71.) In connection with that judgment, Judge Caproni referred the matter to this Court for an inquest on damages and attorneys' fees. (*Id.*)  In so doing, Judge Caproni noted:

> The Plaintiff[] must provide Magistrate Judge Freeman with
> revised documentation on attorneys fees that adjusts the requested
> fees to take into account counsel's repeated mistakes in
> effectuating service on the Defendants. An inquest is further
> required because of a mismatch between the spreadsheet reflecting
> damages and the plaintiff's declaration (e.g., the spreadsheet
> reflects fewer hours per week during the pay period from
> December 31, 2013 to September 28, 2014, than are reflected in
> Plaintiff's declaration).

(*Id.*)

On February 8, 2016, this Court issued a Scheduling Order for a damages inquest, specifically directing Plaintiff's attention to the above-quoted language from the Judgment. (*See* Dkt. 73 (Scheduling Order, dated Feb. 8, 2016) ¶ 4.) This Court's Scheduling Order also stated that Plaintiff's damages submission

> should specifically tie the proposed damages figure(s) to the legal
> claim(s) on which liability has now been established; should
> demonstrate how Plaintiff has arrived at the proposed damages
> figure(s); and should be supported by an affidavit that attaches as
> exhibits and contains an explanation of any documentary evidence
> that helps establish the proposed damages.

(*Id.* ¶ 2.)

As for any application for attorneys' fees and costs, this Court expressly instructed Plaintiff's counsel not only to provide copies of contemporaneous attorney time records (*see id.* ¶ 3(a)), but also to "address the reasonableness of the hourly rates of its attorneys and their support staff" (*id.* ¶ 3(b) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)), and to "provide copies of invoices or other documentation substantiating the amount of costs it has incurred" (*id.* ¶ 3(c)).

This Court directed, in its Scheduling Order, that Plaintiff make his inquest submission no later than March 9, 2016. (*Id.* ¶ 1.) This Court further directed that Defendants respond by April 8, 2016, and cautioned Defendants that, if they failed to respond by that date or to request

an in-court hearing, then this Court would issue a report and recommendation concerning damages on the basis of Plaintiff's written submission alone. (*See id.* ¶ 5.)

On March 9, 2016, Plaintiff filed Proposed Findings of Fact and Conclusions of Law, with attached exhibits (Dkt. 74 (Proposed Findings)), and then, on the same day and without any cover explanation, filed a second, nearly identical submission (Dkt. 75 (Revised Proposed Findings)). Placing the submissions side by side, it appears that the only differences are (1) the addition of two new paragraphs (¶¶ 48, 49) in the Revised Proposed Findings, in which counsel states:

> 48.    Plaintiff's counsel has submitted a revised invoice, reflecting the reduction of fees pursuant to Judge Caproni's February 1, 2016 Order. Plaintiff's counsel has removed fees for mistakes in effectuating service previously listed on the attorney invoice submitted in connection with the Declaration of Michael Faillace, Esq. in Support of Plaintiff's Motion for Default Judgment. (Ex. E Attorney Invoice)
>
> 49.    Specifically, Plaintiff's counsel removed fees for May 20, 2015 through July 31, 2015, for work on a motion for default judgment against the Defendant Diaz, who had not been properly served.

(*compare* Proposed Findings, *with* Revised Proposed Findings), and (2) the addition of a modified law firm "invoice," as described in the paragraphs quoted above, as an exhibit to the Revised Proposed Findings (*see* Dkt. 75-4[5]).

---

[5] Despite the fact that both the Proposed Findings and Revised Proposed Findings refer to attached exhibits by letter designations (*i.e.*, "Exhibit A," "Exhibit B," etc.), the submissions, as docketed, do not bear any such designations. The Revised Proposed Findings attach the following: (1) (presumably intended to be Exhibit A) a copy of the Amended Complaint (Dkt. 75-1); (2) (presumably intended to be Exhibit B) a copy of Plaintiff's previously submitted Declaration (Dkt. 75-2); (3) (presumably intended to be Exhibit C) a damages calculation spreadsheet (Dkt. 75-3); (4) (presumably intended to be Exhibit D) an invoice dated Mar. 9, 2016, on the letterhead of the law firm of Michael Faillace & Associates, P.C. (the "Faillace Firm") (Dkt. 75-4); and (5) (presumably intended to be Exhibit E) an invoice dated

Although, as set out above, this Court directed Plaintiff to demonstrate, in his submission, how he arrived at his proposed damages figures, the Revised Proposed Findings contains only a generalized discussion of the applicable law (*see* Revised Proposed Findings (section headed "Proposed Conclusions of Law") ¶¶ 7-34), a recitation of the facts summarized above, as supported by the Amended Complaint and a Declaration by Plaintiff (*see id.* (section headed "Proposed Findings of Fact") ¶¶ 1-24; *see also id.* (section headed "Almanzar's Damages") ¶¶ 35-40; Dkts. 75-1, 75-2), and a spreadsheet (referred to by Plaintiff as a "Damages Chart"), to which Plaintiff cites, without further explanation, to support his damages calculations (*see* Revised Proposed Findings (section headed "Almanzar's Damages") ¶¶ 42-46; Dkt. 75-3). With respect to his claimed expenses for "tools of the trade," Plaintiff submits no invoices, proof of payment, or any photographic or written information regarding the make or models of the equipment purchased.

Finally, with respect to Plaintiff's request for attorneys' fees and costs, Plaintiff has entirely disregarded this Court's instruction to address the reasonableness of counsel's rates and to provide documentation of costs incurred. All that Plaintiff has submitted is a law-firm "invoice" describing certain tasks performed by particular attorney timekeepers (identified by their initials), the hours spent on those tasks, and the amounts billed. (Dkt. 75-4) While the attorneys' hourly rates can be derived from this invoice, counsel has provided no information whatsoever regarding the reasonableness of those rates, based on the individual attorneys' levels of experience and the rates typically charged in this market and approved by the Court. Counsel has also failed to provide any documentation at all for Plaintiff's claimed "process server"

---

Dec. 27, 2015, also on the letterhead of the Faillace Firm (Dkt. 75-5). When citing to any of these exhibits herein, this Court will cite to the relevant Docket number.

costs – including which defendant(s) (of the four who, at various points, have been named in this case) were the subject of the work performed by any process server, and what that work entailed.

To date, the Court has received no response to Plaintiff's inquest submissions from either Capri or Rodriguez.

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Default Judgment

"[D]efault is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation omitted). Although a "'default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability,'" it does not reach the issue of damages. *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). In conducting a damages inquest, the Court accepts as true all of the factual allegations of the complaint, except those relating to damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted).

A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974))). The burden is on the plaintiff to "introduce sufficient evidence to establish the amount of damages with reasonable certainty," *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv01369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013) (citations omitted), although the plaintiff is entitled

to all reasonable inferences in its favor based upon the evidence submitted, *see U.S. ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation).

Where a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages, *see Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997), and the Court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs alone, *see, e.g.*, *Garden City Boxing Club, Inc. v. Hernandez*, No. 04cv2081 (LAP) (DF), 2008 WL 4974583, at *4-5 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing). While the Court may hold a hearing to assess the amount of damages that should be awarded on default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given "much discretion" to determine whether an inquest hearing need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing" (citations omitted)).

**B.     Burden of Proof in Wage Cases, Where Defendants'
        Records Are Inadequate or Have Not Been Produced**

In an FLSA case, the burden falls on the plaintiff-employee to demonstrate "'that he performed work for which he was not properly compensated.'" *Santillan*, 822 F. Supp. 2d at 293-94 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on*

*other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, *et seq.*).  As noted by the Supreme Court, however, employees "'seldom keep . . . records [of hours worked] themselves,'" *id*. at 294 (quoting *Anderson*, 328 U.S. at 687) (alteration in original), and, "'even if they do, the records may be and frequently are untrustworthy,'" *id*. (quoting *Anderson*, 328 U.S. at 687). Employers, on the other hand, have a duty to maintain such records pursuant to Section 11(c) of the FLSA, and, thus, the "easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secur[e] the production of such records' from the employer." *Id*. (quoting *Anderson*, 328 U.S. at 687) (alteration in original).

A defaulting defendant "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages." *Id*. As a result, where a defendant defaults, a plaintiff may meet his burden of proof "by relying on recollection alone" to establish that he "performed work for which he was improperly compensated." *Id*. at 293-94 (finding, in a default context, that plaintiff provided a "sufficient basis for [the] determination of damages" where he "submitted a sworn declaration containing information as to hours worked and rates of pay based on estimation and recollection," even where the plaintiff's submission was "general and not detailed" (internal quotation marks and citations omitted)).  "Moreover, in the absence of rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Id*. (internal quotation marks and citations omitted); *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (where an employer fails to produce evidence regarding the amount of work that the employee performed or evidence to negate "the reasonableness of the inference to be drawn from the employee's evidence," the court may "award damages to the employee, even though the result be only approximate." (quoting *Anderson*, 328 U.S. at 687-88)).

Under New York law, courts actually "go[] one step further and require[] that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Santillan*, 822 F. Supp. 2d at 294 (quoting N.Y. Lab. Law § 196-a).

### C.   FLSA and NYLL Statutes of Limitations

Under the FLSA, the applicable statute of limitations is generally two years, except that, where the employer is found to have committed a "willful" violation of the law, the limitations period is extended to three years.[6]   29 U.S.C. § 255(a). The applicable limitations period for NYLL claims is six years. N.Y. Lab. Law § 663(3).

### D.   Damages Available Under the FLSA and NYLL
### for Minimum Wage and Overtime Pay Violations

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum wage for the first 40 hours that he or she worked in a given work week. 29 U.S.C. § 206(a). Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." *Id.*, § 207(a)(1); *see also, e.g.*, *Chun Jie Yin v. Kim*, No. 07cv1236 (DLI) (JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (adopting report and recommendation and noting that "[t]he FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the statutory minimum wage) for hours worked above 40 hours per week" (citations omitted)). A plaintiff with a successful minimum-wage claim under the FLSA is entitled to recover damages up to, but not exceeding, these statutory amounts. *See Santillan*,

---

[6] In this case, the period of Plaintiff's employment fell entirely within the two years preceding his filing of his initial Complaint (*see* Almanzar Decl. ¶ 10 (stating that Plaintiff was employed "[f]rom approximately December 2012 until September 28, 2014"); Complaint (Dkt. 1) (filed Sept. 29, 2014)), and thus the Court need not address the issue of willfulness.

822 F. Supp. 2d at 293. At all times relevant to this action, the federal minimum wage was $7.25 per hour, 29 U.S.C. § 206(a)(1)(C), and the corresponding overtime pay requirement (*i.e.*, 150 percent of that rate) was therefore $10.875[7] per hour, *see id.*

Under the NYLL, a prevailing plaintiff is entitled to recover "the full amount of wages owed, not just the statutory minimum wage for the hours worked." *Chun Jie Yin*, 2008 WL 906736, at *4; *see also* N.Y. Lab. Law § 198(3) ("All employees shall have the right to recover full wages . . . accrued during the six years previous to the commencing of such action."). Where, however, a plaintiff-employee was not owed more than the minimum wage, then the statutory rates come into play. For the periods relevant to this action, the statutory minimum wage in New York State was $7.25 per hour in 2012 and 2013, and it was raised to $8.00 per hour as of December 31, 2013. N.Y. Lab. Law § 652(1).[8] The NYLL, like the FLSA, mandates payment at one and one-half times the regular normal rate for each hour worked by an employee in excess of 40 hours per week. 12 N.Y.C.R.R. § 146-1.4.

Although a plaintiff may be "entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the [NYLL], [he or she] may not recover twice." *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08cv3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010). Instead, "[w]here a plaintiff is entitled to damages under both federal and state

---

[7] Some Courts have calculated overtime pay recoveries under the FLSA using $10.875 as a base hourly figure, *see, e.g.*, *Agudelo v. E&D LLC*, No. 12cv0960 (HB), 2012 WL 6183677, at *3 (S.D.N.Y. Dec. 11, 2012), while others have made calculations using the rounded figure of $10.88, *see, e.g.*, *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14cv10234 (JGK) (JLC), 2016 WL 4704917, at *8 (S.D.N.Y. Sept. 8, 2016) (report and recommendation). In this case, Plaintiff's submission utilizes $10.875 as the hourly overtime rate, which the Court finds reasonable. (*See* Discussion *infra*, at Section II(A).)

[8] The New York State minimum wage has twice been raised again, as of December 31, 2014, and as of December 31, 2015, after the period of Plaintiff's employment. *See id.*

wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Wicaksono v. XYZ 48 Corp.*, No. 10cv3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *report and recommendation adopted*, 2011 WL 2038973 (May 24, 2011) (internal quotation marks and citation omitted). Accordingly, when calculating minimum-wage damages, the higher of either the FLSA or the New York minimum wage should be used for any period covered by both statutes. *Wicaksono*, 2011 WL 2022644, at *3.

### E.   Effect on Wage Calculations Where Employee Has Been Required To Purchase "Tools of the Trade"

According to the federal regulations applicable to the FLSA,

> if [there] is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the [FLSA].

29 C.F.R. § 531.35. Vehicles such as bicycles are considered to be "tools of the trade," if the particular employees, such as delivery workers, are required to own and use them during the course of their employment. *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 257-58 (S.D.N.Y. 2008) (finding that delivery workers' bicycles were considered "tools of the trade" because the employer required all delivery workers to own and maintain "vehicular transportation" as a condition of employment); *see also Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 512 (S.D.N.Y. 2010).

State regulations interpreting the NYLL similarly provide that, "[i]f an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage." 12 N.Y.C.R.R. § 146-2.7(c); *see also Yu G. Ke*, 595 F. Supp. 2d at 258 ("[I]n measuring wages we take into account the costs that

plaintiff[] [delivery workers] incurred in purchasing bicycles after they were hired and repairing them during their employment by defendants.").

### F. Liquidated Damages Pursuant to the FLSA and NYLL

In addition to allowing recovery for unpaid minimum wages and overtime compensation, the FLSA provides for the recovery of liquidated damages. *See* 29 U.S.C. § 216(b). Under the statute, a plaintiff is entitled to recover liquidated damages in an amount equal to the amount of unpaid wages and overtime compensation that the plaintiff was improperly denied, unless the employer demonstrates that it acted in good faith and had a reasonable basis for believing that it had not violated the FLSA. *See id.* (providing that plaintiff-employees who prevail under either Section 206 or 207 of the FLSA are entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and . . . an additional equal amount as liquidated damages"); *see also* 29 U.S.C. § 260 (mandating that an employer pay liquidated damages unless the employer demonstrates that he was acting in "good faith" and "had reasonable grounds for believing" that he was not acting in violation of the FLSA); *see also Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014) (adopting report and recommendation).

"As the Second Circuit has observed, 'the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness. . . . The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the norm, single damages the exception.'" *See Galeana*, 120 F. Supp. 3d at 317 (quoting *Reich*, 121 F.3d at 71 (other internal quotation marks and citations omitted)); *Cao*, 2010 WL 4159391, at *5; *Yu G. Ke*, 595 F. Supp. 2d at 261; *see also* 29 U.S.C. § 260.

The NYLL also provides for the recovery of liquidated damages, *see* N.Y. Lab. Law § 198(1-a), but courts within this Circuit have been split on the question of whether a plaintiff may recover liquidated damages under both the FLSA and the NYLL, *see Chen v. Yuen*, No. 04cv06579 (GBD) (KNF), 2015 WL 7758532, at *4 (S.D.N.Y. Dec. 1, 2015) (noting that "[t]here is no appellate authority as to whether a plaintiff may recover cumulative (sometimes called 'simultaneous' or 'stacked') liquidated damages under the FLSA and NYLL," and describing the district courts in the Circuit as being "deeply divided" on this issue (alteration in original; internal quotation marks and citations omitted)).

Earlier this year, this Court came down on the side of allowing simultaneous recovery under the two statutes, *see, e.g.*, *Kernes v. Global Structures, LLC*, No. 15cv00659 (CM)(DF), 2016 WL 880199, at *9 (S.D.N.Y. Mar. 1, 2016) (recommending award of stacked liquidated damages), adopted by Order dated Mar. 1, 2016 (Mem. Endors.) (Dkt. 27 in 15cv00659), but, upon review of the continually evolving precedent on this point, and after further consideration, this Court has become persuaded that its earlier view is less well supported by statutory intent than the contrary view now being expressed in the majority of decisions issued in this District.

Specifically, this Court earlier concluded that, as liquidated damages under the FLSA were intended to be "compensatory," while such damages under the NYLL were (to this Court's understanding) intended to be "punitive," the damages could not be considered duplicative, rendering both available. *See id.* Indeed, several courts had noted this supposed difference in purpose of liquidated damages under the FLSA and the NYLL, *see id.*, at *5 (collecting cases); *see also, e.g.*, *Cao*, 2010 WL 4159391, at *5 (concluding that liquidated damages under the FLSA and the NYLL are supposed to "serve fundamentally different purposes"), and some courts within this District continue to award liquidated damages under both statutes, in adherence

15

with this view, *see, e.g.*, *Rana v. Islam*, No. 14cv1993 (SHS), 2016 WL 5390941, at *4 (S.D.N.Y. Sept. 26, 2016) (finding cumulative liquidated damages to be "appropriate," as FLSA liquidated damages "are considered compensatory," while "liquidated damages under the NYLL are punitive" (internal quotation marks and citation omitted)); *Rodriguez v. Globe Inst. of Tech.*, No. 15cv1435 (RA) (SN), 2016 WL 5795127, at *4 (S.D.N.Y. Aug. 10, 2016) (awarding liquidated damages under both statutes, as each "serves a different purpose – the FLSA to compensate and NYLL to punish"), *report and recommendation adopted*, 2016 WL 5818573 (Oct. 4, 2016).

Other decisions, though, have pointed out what this Court had overlooked – that two amendments to the NYLL have largely undermined the previously well-accepted notion that liquidated damages under the NYLL were to be considered punitive.  First, and most importantly, an amendment to the NYLL, effective November 24, 2009, eliminated the requirement that a plaintiff prove that the employer's NYLL violations were "willful," in order to obtain liquidated damages.  *See McLean v. Garage Mgmt. Corp.*, No. 09cv9325 (DLC), 2012 WL 1358739, at *8 (S.D.N.Y. Apr. 19, 2012) (discussing this former provision of the NYLL). In this regard, the NYLL was amended to align more closely with the FLSA, in that the reference to "willfulness" was eliminated, and replaced by a provision allowing "for a liquidated damages award 'unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'"  *Id.* (quoting N.Y. Lab. Law § 198(1-a)).  It was based on the *prior* language of the statute that liquidated damages under the NYLL had generally been thought, by the courts, "to 'constitute a penalty to deter an employer's *willful* withholding of wages due.'"  *Morales v. Mw Bronx, Inc.*, No. 15cv6296 (TPG), 2016 WL 4084159, at *9 (S.D.N.Y. Aug. 1, 2016) (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir.

1999)) (other internal quotation marks and citation omitted); *see also Hernandez v. Jrpac Inc.*, 14cv4176 (PAE), 2016 WL 3248493, at \*34 (S.D.N.Y. June 9, 2016). This Court is now persuaded that, as "the willfulness requirement [has been] changed to match the FLSA's good faith requirement," *Tapia v. Blch 3rd Ave. LLC*, No. 14cv8529 (AJN), 2016 WL 4581341, at \*7 (S.D.N.Y. Sept. 1, 2016), the premise underlying the "view that NYLL liquidated damages were penalties . . . . is no longer accurate," *Morales*, 2016 WL 4084159, at \*9; *see also, e.g.*, *Hernandez*, 2016 WL 3248493, at \*34; *Hengjin Sun v. China 1221, Inc.*, No. 12cv7135 (RJS), 2016 WL 1587242, at \*4 (S.D.N.Y. Apr. 19, 2016).

Second, an amendment to the NYLL, effective April 9, 2011, increased the amount of available liquidated damages from 25 percent of unpaid minimum and overtime wages to 100 percent. *See Najnin v. Dollar Mountain, Inc.*, No. 14cv5758 (WHP), 2015 WL 6125436, at \*2 (S.D.N.Y. Sept. 25, 2015) (citations omitted); *see also* N.Y. Lab. Law § 663(1). This effectively brought the NYLL still "further in line with the FLSA." *Morales*, 2016 WL 4084159, at \*9; *see also, e.g.*, *Hernandez*, 2016 WL 3248493, at \*34 ("the NYLL provision was modified to track the FLSA's as to the amount of liquidated damages").

As some courts have reasoned, these "recent amendments to the NYLL have undermined the basis for . . . a distinction" between the purposes of "liquidated damages under the FLSA and NYLL," *Santana v. Latino Express Rests., Inc.*, No. 15cv4934 (LTS), 2016 WL 4059250, at \*5 (S.D.N.Y. July 28, 2016) (internal quotation marks and citation omitted); *see also Hernandez*, 2016 WL 3248493, at \*35 (noting that these amendments render elusive "the earlier distinction between the FLSA's compensatory provision and the NYLL's punitive provision"), "spawn[ing] an emerging trend towards denying a cumulative recovery of liquidated damages under the FLSA and NYLL." *Hengjin Sun*, 2016 WL 1587242, at \*4 (internal quotation marks and

citation omitted). In fact, it appears that the majority view in this District has recently shifted away from the *allowance* of simultaneous liquidated damages, *see, e.g.*, *Ni v. Bat-Yam Food Servs. Inc.*, No. 13cv07274 (ALC) (JCF), 2016 WL 369681, at *2 (S.D.N.Y. Jan. 27, 2016) (finding, earlier this year, that "allowing recovery under both statutes appears to be the majority approach" (internal quotation marks and citations omitted)); *Pinovi v. FDD Enters., Inc.*, No. 13cv2800 (GBD) (KNF), 2015 WL 4126872, at *6 (S.D.N.Y. July 8, 2015) (noting, last year, that "[t]he prevailing view remains that recovery under both [the FLSA and the NYLL] is proper" (citations omitted)); *Bazignan v. Team Castle Hill Corp.*, No. 13cv8382 (PAC), 2015 WL 1000034, at *3 (S.D.N.Y. Mar. 5, 2015) (same), and towards the *disallowance* of a simultaneous award, *see, e.g.*, *Andrade v. 168 First Ave. Rest. Ltd.*, No. 14cv8268 (JPO) (AJP), 2016 WL 3141567, at *7-8 (S.D.N.Y. June 3, 2016) (report and recommendation, noting that "[t]he 'prevailing view' now is that double liquidated damages should not be awarded" (citation omitted)), *report and recommendation adopted*, 2016 WL 3948101 (July 19, 2016); *see also Xochimitl*, 2016 WL 4704917, at *17; *Tapia*, 2016 WL 4581341, at *7; *Morales*, 2016 WL 4084159, at *9-10; *Hernandez*, 2016 WL 3248493, at *35; *Hengjin Sun*, 2016 WL 1587242, at *4; *Castillo v. RV Transport, Inc.*, No. 15cv0527 (LGS), 2016 WL1417848, at *2-3 (S.D.N.Y. Apr. 11, 2016) (modifying report and recommendation).

This Court now joins this emerging trend, and concludes that, where the employment period at issue post-dates the November 24, 2009, the date on which the willfulness requirement was removed from the NYLL, cumulative liquidated damages under both the FLSA and the NYLL should not be awarded. *See Hengjin Sun*, 2016 WL 1587242, at *4, *Andrade*, 2016 WL 3141567, at *8. Rather, the plaintiff should be permitted recovery "under the statute that provides the greatest relief." *Castillo*, 2016 WL1417848, at *3 (citation omitted); *see also*

18

*Morales*, 2016 WL 4084159, at *10 (courts awarding damages under only one statute "apply whichever . . . statute results in the higher award for the plaintiff" (collecting cases)).

G.  **New York State Wage Notice Requirements**

1.  **Wage Statements**

Pursuant to New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL that was made effective as of April 9, 2011, employers are required to

> 'furnish each employee with a statement with every payment of wages, listing the following' information:  (1) the dates of work covered by that payment of wages; (2) the employee's name; (3) the employer's name, address, and telephone number; (4) the rate or rates of pay and basis thereof; (5) gross wages; (6) deductions; (7) allowances, if any, claimed as part of the minimum wage; and (8) net wages.

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 475 (S.D.N.Y. 2015) (quoting N.Y. Lab. Law § 195(3)); *see also Baltierra v. Advantage Pest Control Co.*, No. 14cv5917 (AJP), 2015 WL 5474093, at *10-11 (S.D.N.Y. Sept. 18, 2015).  During the period relevant to this action, "the WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500." *Baltierra*, 2015 WL 5474093, at *10 (citation omitted); *accord Inclan v. N.Y. Hospitality Grp., Inc.*, 95 F. Supp. 3d 490, 501 (S.D.N.Y. 2015); *see also* 2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Lab. Law § 198(1-d).[9]

2.  **Wage Notices**

In addition, beginning April 9, 2011, the WTPA required employers to provide written wage notices "on or before February first of each subsequent year of the employee's employment with the employer."  N.Y. Lab. Law § 195(1)(a) (eff. April 9, 2011 to Feb. 27, 2015).  The wage

---

[9] The $2,500 cap was raised to $5,000 by amendments effective February 27, 2015, *see* 2014 N.Y. Laws ch. 537 § 2, after the period of Plaintiff's employment.

notice was required to be "in English and in the language identified by each employee as the primary language of such employee," *id.*, and was required to contain the following information:

> (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any 'doing business as' names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

*Salinas*, 123 F. Supp. 3d at 474 (footnote omitted).  During the period at issue here, "the WTPA entitled employees to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500."  *Baltierra*, 2015 WL 5474093, at *11; *accord Inclan*, 95 F. Supp. 3d at 501-02; *see also* 2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Lab. Law § 198(1-b).[10]

## H.    Prejudgment Interest

Generally, "[t]he decision to award prejudgment interest is discretionary, and is based on the need to fully compensate the wronged party, [the] fairness of the award, and the remedial purpose of the statute involved."  *Najnin*, 2015 WL 6125436, at *3 (citation omitted).  A plaintiff who recovers liquidated damages under the FLSA, however, is not also entitled to prejudgment interest on his or her FLSA damages.  *See, e.g.*, *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("'It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" (quoting *Begum v. Ariba Disc., Inc.*, No. 12cv6620 (DLC) (KNF), 2015 WL 223780, at *3 (S.D.N.Y.

---

[10] The $2,500 cap on these types of statutory damages was also raised by amendment to the statute, but this amendment similarly became effective February 27, 2015, *see* 2014 N.Y. Laws ch. 537 § 2, after Plaintiff's employment with Defendants had ended.

Jan. 16, 2015))). Given that FLSA liquidated damages serve a compensatory, rather than punitive, purpose, "there is no need to employ pre-judgment interest to restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection violation." *Id*. Thus, in an action where both FLSA and NYLL claims are brought, "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA." *Andrade*, 2016 WL 3141567, at *9 n.7.

In contrast, courts have long held that, under the NYLL, a plaintiff may recover both liquidated damages and pre-judgment interest. *See Fermin*, 93 F. Supp. 3d at 48; *Begum*, 2015 WL 223780, at *3. Earlier decisions, however, were rooted in the same view of the NYLL's liquidated damages provision as punitive in nature that justified the awarding of cumulative liquidated damages. *See, e.g.*, *Fermin*, 93 F. Supp. 3d at 48 ("because New York State views liquidated damages as punitive, and not compensatory . . . pre-judgment interest is not a duplicative damages award" (citations omitted)); *see also Hernandez*, 2016 WL 3248493, at *35 ("Historically, the case law permitting the award of prejudgment interest alongside . . . liquidated damages . . . relied on the distinction between the punitive purpose of NYLL liquidated damages and the compensatory purpose of prejudgment interest."). Just as the 2009 and 2011 amendments to the NYLL undermined the distinction between the NYLL and FLSA liquidated damages provisions as punitive and compensatory in nature, respectively, here too the amendments "undermine the distinction between liquidated damages and prejudgment interest." *Santana*, 2016 WL 4059250, at *5 (citation omitted). Nevertheless, "a separate basis [now] applies for the award of prejudgment interest alongside a liquidated damages award," namely, an express provision, also added to the NYLL in 2011, "for a plaintiff to receive both types of awards." *Hernandez*, 2016 WL 3248493, at *35 (citing N.Y. Lab. Law 198(1-a)); *see also*

*Castillo*, 2016 WL 1417848, at \*3.  Under the state law, "[p]rejudgment interest is calculated . . . on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law."  *Mejia v. East Manor USA Inc.*, No. 10cv4313 (NG), 2013 WL 3023505, at \*8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *report and recommendation adopted*, 2013 WL 2152176 (May 17, 2013).

"Pursuant to [New York] state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year."  *Najnin*, 2015 WL 6125436, at \*4; *see also* N.Y.C.P.L.R. §§ 5001, 5004.  As to the date from which interest should be found to run, "Section 5001(b) sets forth two methods of calculating prejudgment interest."  *Alvarez v. 215 N. Ave. Corp.*, No. 13cv049 (NSR) (PED), 2015 WL 3855285, at \*3 (S.D.N.Y. June 19, 2015) (adopting report and recommendation).

> First, interest may be calculated from 'the earliest ascertainable date the cause of action existed,' N.Y. C.P.L.R. § 5001(b). However, '[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.' *Id.*

*Alvarez,* 2015 WL 3855285, at \*3.  It is within the Court's "'wide discretion'" to "'determin[e] a reasonable date from which to award prejudgment interest.'"  *Id.* (quoting *Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir. 1994)).

## I.  Joint and Several Liability of "Employers" Under the FLSA and NYLL

The FLSA imposes liability on "employers," a group that is "broadly define[d] [to include] 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'"  *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342-43 (S.D.N.Y. 2005) (quoting 29 U.S.C. § 203(d)).  "The definition of 'employer' is similarly expansive under

New York law, encompassing any 'person employing any [employee].'" *Id.* (quoting

N.Y. Lab. Law §§ 2(6)). To determine whether a party qualifies as an "employer" under both

statutes' "generous definitions," the relevant inquiry is "'whether the alleged employer possessed

the power to control the workers in question, . . . with an eye to the economic reality presented

by the facts of each case.'" *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139

(2d Cir. 1999)).

"[W]hen examining the 'economic reality' of a particular situation," courts will evaluate

various factors, none of which, individually, is dispositive. *Id.* These factors include "'whether

the alleged employer (1) had the power to hire and fire the employees, (2) supervised and

controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employment records.'" *Id.* (quoting *Herman,* 172 F.3d

at 139). Further, "'[t]he overwhelming weight of authority is that a corporate officer with

operational control of a corporation's covered enterprise is an employer along with the

corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages.'"

*Id.* (quoting *Moon v. Kwon,* 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002), and finding defendants

jointly and severally liable under both the FLSA and the NYLL).

### J.       Attorneys' Fees and Costs

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her

reasonable attorney's fees and costs." *Najnin*, 2015 WL 6125436, at *4; *see* 29 U.S.C. § 216(b);

N.Y. Lab. Law § 198(1-a). The Court has discretion to determine the amount of attorneys' fees

that would be appropriate to satisfy a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437

(1983). As a general matter, the "starting point" in analyzing whether claimed attorneys' fees

are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable

number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a "presumptively reasonable fee" (internal quotation marks omitted; citing *Arbor Hill*, 522 F.3d at 183, and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the Court with sufficient information to assess the fee application, *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id*. When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly. *See Seitzman v. Sun Life Assurance Co. of Canada*,

311 F.3d 477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours).  In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as "the straightforward nature of the work performed [and] the relative simplicity of the issues involved," *see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13cv3061 (JGK), 2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) (citations and internal quotations omitted).

In addition to the lodestar amount, attorneys' fees may include "'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted).  These expenses, or "costs," may include photocopying, travel, telephone costs, and postage, *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987), as well as filing fees and reasonable process server fees, *Rosendo v. Everbrighten Inc.*, No. 13cv7256 (JGK) (FM), 2015 WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 4557147 (July 28, 2015).

## II.    PLAINTIFF'S DAMAGES CLAIMS

### A.    Plaintiff's Claim for Unpaid Wages

As a threshold matter, even given the cursory nature of certain of Plaintiff's submissions, this Court finds those submissions to be sufficient to meet his burden of proof to establish that he was not paid minimum wages and overtime, as required by law, such that a hearing on such damages is not required.  *See Fustok*, 873 F.2d at 40 (noting that the district court has the discretion to determine whether a hearing is necessary).  As noted above, in the context of a

default, where the defendant has neither provided any employment records, nor otherwise rebutted the plaintiff's damages claims, it is sufficient for a plaintiff to reply on his "recollection alone" to establish the hours he worked and the rates he should have been paid. *Santillan*, 822 F. Supp. 2d at 294 (internal quotation marks and citations omitted). In this case, the well-pleaded factual allegations presented in the Amended Complaint, which are accepted as true for purposes of this inquest, set out Plaintiff's recollections regarding the hours he worked and the rates of pay he earned for that work. (Am. Compl. ¶¶ 48, 50.) Although Plaintiff has not provided a detailed explanation of his resulting damages computation, or supported all of his expense figures with documentation, this Court nonetheless finds that it has adequate information to make a reasonable assessment of damages.

Plaintiff asserts that, for the entire period of his employment, he worked as a grill worker and a delivery worker, but that, even as a delivery worker, he was "required to spend several hours each day performing non-tipped duties." (*See* Am. Compl. ¶ 5; *see also* n.2, *supra*.) This allegation, taken as true, is sufficient to demonstrate that Defendants were not entitled to pay Plaintiff a reduced minimum wage, based on a "tip credit," under the NYLL. *See* 12 N.Y.C.R.R. § 146-2.9 (no tip credit available on any day that "service employee . . . works at a non-tipped occupation: (a) for two hours or more; or (b) for more than 20 percent of his or her shift, whichever is less"); *accord id.* § 146-3.3(c).[11] Plaintiff further asserts that Defendants never notified or informed him that "his tips would be included as an offset for wages." (Am. Compl. ¶¶ 54, 63.) These allegations, accepted for purposes of this inquest, suffice to demonstrate that

---

[11] Under the FLSA, where a tipped employee "spend[s] a substantial amount of time, or more than twenty percent of [his] workweeks, engaged in . . . non-tip-producing work," he "must be paid the full minimum wage for the time spent performing the non-tipped work." *Chhab v. Darden Rests., Inc.*, No. 11cv8345 (NRB), 2013 WL 5308004, at *3 (S.D.N.Y. Sept. 20, 2013) (citation omitted).

Defendants were also not entitled to pay Plaintiff a reduced minimum wage, based on a "tip credit," under the FLSA. *See Hernandez*, 2016 WL 3248493, at *23 ("Courts in and outside of this District have interpreted the notice provision [Section 203(m) of the FLSA] to require at the very least notice . . . of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations." (internal quotation marks and citations omitted)).[12]

For the first portion of his employment, from "approximately December 2012" to December 30, 2013, Plaintiff was therefore required to be paid a minimum wage of $7.25 per hour for the first 40 hours per week of work. It appears from Plaintiff's damages spreadsheet that he has estimated the starting point of this period as December 15, 2012 (*see* Dkt. 75-3), *i.e.*, a point mid-way through the month. Using that start date, Plaintiff apparently estimates this first period of his employment to have consisted of 54 weeks. (*See id.*)[13] Plaintiff asserts that, throughout this time, he was paid at a base hourly rate of $6.90 per hour, calculated by dividing his weekly pay of $276.00 by the first 40 hours of the week. *See Pinovi*, 2015 WL 4126872, at *4 ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement." (collecting cases)); *see also*

---

[12] The NYLL has similar notice provisions, *see* 12 N.Y.C.R.R. §§ 146-1.3, 2.2, although "the New York Department of Labor (NYDOL), as well as at least one other court in this district, has interpreted [those provisions] to permit employers lawfully to claim the tip credit if they can prove that their employees understood that they were being paid pursuant to the tip credit minimum wage," *Franco v. Jubilee First Ave. Corp.*, No. 14cv07729 (SN), 2016 WL 4487788, at *13 (S.D.N.Y. Aug. 25, 2016) (citations omitted). Here, Defendants have failed to appear and make any such showing. In any event, as Plaintiff's allegation regarding his time spent engaging in non-tipped duties separately forecloses availability of a tip credit under the NYLL, this Court need not give additional consideration to the nature of the NYLL's notice requirements.con

[13] Using a December 15 start date, the period would actually constitute 54 weeks and two days, but this Court finds 54 weeks to be a reasonable estimate.

12 N.Y.C.R.R. § 146-3.5(b) (codifying presumption). As this was below the required minimum wage of $7.25 per hour, Plaintiff has demonstrated a valid minimum-wage claim for this period.

As set out above, Plaintiff asserts that, throughout his employment, he worked four days per week for 10 hours per day (40 hours), plus two additional days for nine hours per day (18 hours), totaling 58 hours per week. This means that, after the first 40 hours, he worked 18 hours of overtime each week. For the period up to December 30, 2013, the minimum weekly pay to which he was entitled was therefore $290.00 in regular pay ($7.25/hour x 40 hours) plus $195.75 in overtime ($10.875/hour x 18 hours), for a total of $485.75 per week. Without taking into account any "tools of the trade" expenses that may have had the effect of further reducing his pay, Plaintiff was thus underpaid by $209.75 for each week in this period ($485.75 - $276.00). Over 54 weeks, this resulted in an underpayment of $11,326.50 ($209.75/week x 54 weeks).

For the second period of his employment, from December 31, 2013 to September 28, 2014, Plaintiff was entitled to take advantage of the higher ($8.00 per hour) minimum wage that was then afforded by state law. *See Wicaksono*, 2011 WL 2022644, at *3 ("[w]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages" (alteration in original) (quoting *Jiao v. Chen*, No. 03cv0165 (DF), 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007))). Plaintiff's damages spreadsheet indicates that this second period of time consisted of 39 weeks,[14] and Plaintiff again asserts that he was paid a base hourly rate of only $6.90 per hour, entitling

---

[14] Again, this is only an estimate, as the period would actually consist of 38 weeks and five days, but the Court considers the estimate to be reasonable.

him to damages for failure to pay the required minimum wage. He also again claims entitlement to 18 hours of overtime pay, based on his working 58 hours per week.[15]

For the period commencing December 31, 2013, the minimum weekly pay to which Plaintiff was entitled was $320.00 in regular pay ($8.00/hour x 40 hours) plus $216.00 in overtime ($12.00/hour x 18 hours), for a total of $536.00 per week. As he was paid only $276.00 per week, Plaintiff was thus underpaid by $260.00 for each week in this period ($536.00 - $276.00). Using Plaintiff's reasonable estimate of 39 weeks, this resulted in an underpayment of $10,140.00 ($260/week x 39 weeks).

Overall, these calculations, which conform with the damages spreadsheet that Plaintiff has now submitted, yield a total of $21,466.50 ($11,326.50 for the first period, plus $10,140.00 for the second period).

### B.   Claim for "Tools of the Trade" Damages

As shown above, even without accounting for any bicycles or other items that Plaintiff may have been required to purchase in order to perform his job, Plaintiff's weekly pay was below the state and federal minimum wage. Mathematically, then, the unpaid wages that he should be entitled to recover should simply be increased by the amount that he can demonstrate that he paid for "tools of the trade." *See, e.g.*, *Tapia*, 2016 WL 4581341, at *6 (cost of tools is "deducted from the employee's wages for purposes of calculating whether he was paid minimum wage and overtime under the FLSA and NYLL" (citations omitted)); *Cuzco v. Orion Builders,*

---

[15] A damages spreadsheet that Plaintiff submitted in connection with his initial motion for a default judgment reflected that Plaintiff had only worked 51 hours per week, during this second period of his employment. This was inconsistent with Plaintiff's submitted Declaration, which reflected that Plaintiff had always worked 58 hours per week, and thus Judge Caproni directed Plaintiff to correct the "mismatch" in connection with this inquest. (Dkt. 71.) Plaintiff has now submitted a revised spreadsheet, which, like Plaintiff's Declaration, indicates that Plaintiff worked 58 hours per week for the duration of his employment. (*See* Dkt. 75-3.)

*Inc.*, 262 F.R.D. 325, 332 (S.D.N.Y. 2009) (where defendants failed to properly reimburse plaintiffs for tools of the trade, plaintiffs were "entitled to the difference between the minimum wage and their actual 'net' wage"); *Yu G. Ke*, 595 F. Supp. 2d at 258.

In this instance, this Court has only been presented with Plaintiff's bare assertion that, in order to be able to work for Defendants (presumably as a delivery worker), he was required to purchase two bicycles (one of which was motorized), a helmet, chain, and lock. (Almanzar Decl. ¶ 15.) Although Plaintiff has failed to supply any receipts or other documentation to support these purchases, this Court may accept Plaintiff's statement, made under penalty of perjury, that he was required to purchase the specified equipment, and that the costs were the amounts stated. Nonetheless, this Court has no basis for recommending that Plaintiff be awarded the cost of *two* bicycles, in the absence of any showing, testimonial or otherwise, that he needed to acquire two separate means of transportation to perform his assigned job. Plaintiff, for example, has not explained in his Declaration that one of the two bicycles was lost, stolen, or rendered inoperable during the course of his employment, or that he was required by Defendants to use different types of bicycles for different purposes. Plaintiff has certainly provided this Court with no reason why he would have needed to acquire not just a bicycle to perform his job, but also a *motorized* one, at more than 11 times the cost of a standard bicycle. In the absence of any such showing, I recommend that Plaintiff's unpaid wages be adjusted upward only for the amount of one standard bicycle, together with the helmet, bicycle chain, and lock – an amount Plaintiff provides as $175.00 (*i.e.*, $60 for the bicycle + $30 for the helmet + $35 for the chain + $50 for the lock). (*See id.*)

Adjusting Plaintiff's unpaid wages for these unreimbursed expenses that he was required to pay results in an increase from $21,466.50 to $21,641.50.

C.    **Plaintiff's Claim for Liquidated Damages**

As discussed above, both the FLSA and the NYLL also provide for the recovery of liquidated damages.  Indeed, both statutes mandate that the Court award liquidated damages to a prevailing plaintiff, unless the defendant employer demonstrates that it acted in good faith or had a reasonable basis to believe that it was acting in compliance with the law.  (*See* Discussion, *supra*, at Section I(F).)  Here, given Defendants' default, they have not met their burden of proving that they acted in good faith, *see Galeana*, 120 F. Supp. 3d at 317, and thus liquidated damages are available under the provisions of both statutes.  29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). For the reasons described above, however, this Court finds that Plaintiff may recover liquidated damages under only one statute, rather than under *both* the FLSA and the NYLL, simultaneously.  (*See* Discussion, *supra*, at Section I(F).)  The Court should thus award damages under "whichever . . . statute results in the higher award" for Plaintiff.  *Morales*, 2016 WL 4084159, at *10 (citations omitted).

Under the FLSA, liquidated damages are equal to the amount of unpaid wages, including unpaid overtime pay, that a plaintiff would be entitled to recover under the FLSA, even where, as here, the plaintiff may be awarded higher damages pursuant to the NYLL.  *See Angamarca v. Pita Grill 7 Inc.*, No. 11cv7777 (JGK) (JLC), 2012 WL 3578781, at *8.  Here, the federal minimum wage remained at $7.25 per hour for the duration of Plaintiff's employment, while the state minimum wage increased from $7.25 to $8.00 per hour on December 31, 2013.  As set forth above, Plaintiff was underpaid by $209.75 during each week that both the state and federal minimum wages were set at $7.25 per hour.  (*See* Discussion, *supra*, at Section II(A).)  Multiplying that weekly deficit by Plaintiff's 93 total weeks of employment ($209.75/week x 93 weeks) results in the figure of $19,506.75.  Taking into account the $175.00 adjustment made

31

above for "tools of the trade" expenses, Plaintiff's unpaid wages (and associated award of liquidated damages) under the FLSA would only have totaled $19,681.75.

Under the NYLL, Plaintiff may recover liquidated damages in an amount equal to his unpaid wages under state law. The Court has calculated that amount above (again taking into account Plaintiff's work-related expenses), as $21,641.50. As the NYLL affords Plaintiff greater relief than the FLSA, this Court recommends that Plaintiff be awarded $21,641.50 in liquidated damages, under the NYLL.

### D.    Plaintiff's Claim for Statutory Damages

Plaintiff further contends that, throughout the duration of his employment, Defendants failed to provide him with wage statements and annual wage notifications, and that he is therefore entitled to additional statutory damages, pursuant to the NYLL, for these notice violations. (Am. Compl. ¶¶ 104-05, 107-08.) In this regard, Plaintiff proposes that he be awarded $2,500 for the failure to provide wage statements, and $2,500 for the failure to provide an annual wage notification. (*Id.*)

As laid out above, the WTPA imposes statutory damages of $100 per work week, capped at $2,500, for the failure to provide employees with compliant wage statements, where such damages were incurred between April 9, 2011 and February 27, 2015. (*See* Discussion, *supra*, at Section I(G)(1) and n.9; *see also* 2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Lab. Law § 198(1-d).) Thus, accepting Plaintiff's claim that he was employed by Defendants from approximately December 2012 to September 28, 2014 (*i.e.*, in excess of 25 weeks), and that he never received a wage statement from Defendants (*see* Am. Compl. ¶ 107), he is entitled to the maximum amount of $2,500 in statutory damages for these wage-statement violations.

As also discussed above, the WTPA imposes statutory damages of $50 per work week, capped at $2,500, for the failure to provide employees with compliant annual wage notices, where such violations occurred between April 9, 2011 and February 27, 2015. (*See* Discussion, *supra*, at Section I(G)(2) and n.10; *see also* 2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Lab. Law § 198(1-b).) Given that Plaintiff maintains that he did not receive a wage notice for the entire duration of his employment, a period in excess of 50 weeks, he is entitled to the maximum of $2,500 in statutory damages for such notice violations. *See Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12cv9353 (PAC), 2015 WL 1881080, at *4 (S.D.N.Y. Apr. 24, 2015); *Cuzco v. F & J Steaks 37th St. LLC*, No. 13cv1859 (PAC), 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014).

In sum, this Court recommends that Plaintiff be awarded his requested $5,000 in statutory damages for Defendants' failure to provide him with both wage statements and wage notices for the time periods discussed above.

### E.   Plaintiff's Claim for Prejudgment Interest

Plaintiff also seeks prejudgment interest on his unpaid wages. As noted, the NYLL provides that a plaintiff may recover both liquidated damages and prejudgment interest on the underlying damages. *See Hernandez*, 2016 WL 3248493, at *35; *Castillo*, 2016 WL 1417848, at *3. Nevertheless, "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA." *Andrade*, 2016 WL 3141567, at *9 n.7. As, in this case, this Court is recommending an award of liquidated damages only pursuant to the NYLL, Plaintiff would be "eligible for an award of prejudgment interest on the full . . . damages arising out of his wage claims." *Xochimitl*, 2016 WL 4704917, at *18. Under the NYLL, prejudgment interest is awarded at a rate of nine percent per annum, *Najnin*,

33

2015 WL 6125436, at *4; N.Y.C.P.L.R. § 5004, and such interest may be calculated from either the "earliest ascertainable date the cause of action existed" or "from a single reasonable intermediate date," where damages were incurred at various times, N.Y.C.P.L.R. § 5001(b).

In this case, Plaintiff seeks prejudgment interest on his unpaid wages, including unpaid overtime pay, as calculated under the NYLL, in the amount of nine percent per annum, from the "median date of the start of the NYLL violations to the date of judgment." (Revised Proposed Findings ¶ 33.) As Judge Caproni has not yet determined the amount of damages to award to Plaintiff, this Court is not currently able to calculate prejudgment interest to the date of any such award, and, perhaps for that reason, Plaintiff has offered no proposed interest calculation. This Court can, however, calculate interest up to the date when Plaintiff filed his inquest submissions, and can recommend that the Clerk of Court calculate additional interest to the date when final judgment, awarding damages, is entered.

The median date for the period of Plaintiff's employment (from December 15, 2012 to September 28, 2014) is November 6, 2013, and the principal amount at issue (*i.e.*, the amount of Plaintiff's unpaid wages under state law), to which an interest calculation would be applicable, is $21,641.50. Applying the prejudgment rate of nine percent per annum to this principal amount, for the period from November 6, 2013 to March 9, 2016 (the date of Plaintiff's inquest submissions), yields interest in the amount of $4,557.17. This Court recommends that this amount be awarded to Plaintiff in prejudgment interest, and that additional prejudgment interest be awarded on the stated principal amount at a rate of nine percent per annum, from March 10, 2016 to the date final judgment is entered, with such additional interest to be calculated by the Clerk of Court.

### F.     Joint and Several Liability

Plaintiff requests that Defendants Capri and Rodriguez be held jointly and severally liable for the damages owed to Plaintiff in this action.  (*See* Am. Compl. ¶¶ 29-39 ("*Defendants Constitute Joint Employers*" (italics in original)).)   Under both the FLSA and NYLL, "employers" – *i.e.*, those who "possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case," *Doo Nam Yang*, 427 F. Supp. 2d at 342 (internal quotation marks and citation omitted) – may be held liable for violations of each statute, *id.*  In this case, Plaintiff's well-pleaded allegations are sufficient to support a finding that, while Plaintiff was an employee at Capri, both Defendants had control over the "economic reality" of Plaintiff's employment.

Plaintiff has alleged that both Defendants had "the power to hire and fire" him (Am. Compl. ¶ 37), "controlled the terms and conditions of his employment" (*id.*), and "determined the rate and method" of his compensation (*id.*).  Plaintiff has also alleged that Rodriguez not only possessed an "ownership interest" in Capri (*id.* ¶ 30), but also had "operational control" over the corporation (*id.*), and "substantial control" over Plaintiff's working conditions (*id.* ¶ 32).  Taking these allegations as true upon Defendants' default, this Court finds that both Capri and Rodriguez should be found to have been employers of Plaintiff, such that it would be appropriate for the Court to hold them jointly and severally liable.

## III.    ATTORNEYS' FEES AND COSTS

Plaintiff seeks $9,612.50 in attorneys' fees for 24.35 hours of work performed by counsel in connection with this action, and litigation costs in the amount of $625.00. (Dkt. 75-4.) For the reasons that follow, I recommend that, while attorneys' fees and costs be awarded, the requested fees be reduced to $7,266.25, and that the requested costs be reduced to $400.

A.     **Reasonable Hourly Rates**

Plaintiff was represented in this case by the Faillace Firm, and specifically by Michael Faillace, Esq. ("Faillace"), Joshua S. Androphy, Esq. ("Androphy"), and Johanna Sanchez, Esq. ("Sanchez"). (*See* Dkt.) As an initial matter, this Court notes that this is hardly the first time the Faillace Firm has sought attorneys' fees from this Court, in connection with a wage-and-hour case. Each time that the firm has been before this particular Court for a damages inquest, this Court has expressly instructed counsel that any fee application must be adequately supported, and, despite this, the fee submission that has been made here is largely devoid of support. First, while, in this case, there are three attorneys of record listed on the Docket (Faillace, Androphy, and Sanchez), and while those attorneys' initials match the initials shown on the submitted attorney "invoice" ("MF," "JA," and "JS"), the Court nonetheless notes that it has still been required to speculate that the initials on the invoice actually represent the named attorneys. Second, the Court has been forced to derive these attorneys' hourly rates from the invoice and, similarly, to determine, from its own calculations, whether the attorney rates remained constant during the duration of the action. Third, the hourly rates that the Court has derived from the invoice ($450/hour for Faillace, $400/hour for Androphy, and $300/hour for Sanchez) are not supported with any explanation of their reasonableness.

In fact, as this Court has already twice concluded, the hourly rates that are apparently being requested by Plaintiff's counsel are, at least to some extent, higher than the "prevailing [rates] in the community for similar services by lawyers of reasonably comparable . . . experience." *Elisama v. Ghzali Gourmet Deli, Inc.*, No. 14cv8333 (PGG) (DF), 2016 U.S. Dist. LEXIS 58833, at *53 (S.D.N.Y. Apr. 29, 2016) (report and recommendation) (quoting *Blum*, 465 U.S. at 895 n.11), amended on other grounds (Nov. 7, 2016); *Rodriguez v. Obam Mgmt. Inc.*,

13cv00463 (PGG) (DF), 2016 U.S. Dist. LEXIS 34154, at *73 (S.D.N.Y. Mar. 14, 2016) (report and recommendation) (same), amended on other grounds (Nov. 7, 2016). In reaching that conclusion in *Elisama* and *Rodriguez*, this Court considered what had been presented to it (or what it could independently ascertain) regarding the experience of the attorneys involved, and took note of a number of other decisions from within this District that had reduced the billing rates requested by certain of the same attorneys, for work performed on similar wage cases that had also resulted in defaults. *See, e.g., Rosendo*, 2015 WL 1600057, at *8 (collecting cases in which lawyers from the Faillace Firm had been awarded "below [the attorneys'] requested 'regular' hourly rates" and awarding fees at the rates of $400/hour for Faillace and $300/hour for Androphy); *see also Apolinario v. Luis Angie Deli Grocery Inc.*, No. 14cv2328 (GHW), 2015 WL 4522984, at *3 (S.D.N.Y. July 27, 2015) (approving Faillace's requested rate of $450 per hour, but finding that a rate of $300 per hour would be appropriate for senior associates with at least eight years of experience, and finding that rate to be reasonable for Androphy). More recently, two additional decisions issued in this District reduced Faillace's and Androphy's rates to $425 and $300 per hour, respectively. *See Xochimitl*, 2016 WL 4704917, at *20; *Andrade*, 2016 WL 3141567, at *11.

This Court is aware that Faillace is the managing partner of his firm,[16] its senior attorney, and an experienced FLSA litigator. Given his level of experience, this Court has previously recommended that his requested rate of $450 per hour be approved, although with some reductions to take into account work that could have been performed by an attorney at a more

---

[16] *See* http://www.faillacelaw.com/our-attorneys/michael-faillace/ (identifying Faillace as the Faillace Firm's "Managing Partner") (last visited Oct. 27, 2016).

junior level.  *See Rodriguez*, 2016 U.S. Dist. LEXIS 34154, at *76-77.[17]  This Court will adhere to that recommendation here.

As for Androphy, a senior associate with the Faillace Firm,[18] this Court has previously recommended, consistent with other recent decisions of the Court, that his requested hourly rate of $400 be reduced to $300, *Rodriguez*, 2016 U.S. Dist. LEXIS 34154, at *73-74, and this Court maintains its view that this reduction would be appropriate.

Finally, as to Sanchez, this Court notes that, in connection with a damages inquest in *Elisama*, Faillace submitted a declaration, dated April 17, 2015, in which he described Sanchez as a "Legal Clerk."  *Elisama*, 2016 U.S. Dist. LEXIS 58833, at *51-52.  This Court assumed that this likely meant that Sanchez was, at the time, an attorney not yet admitted to the bar, and recommended that her rate be set at $120 per hour, based on recent precedent in this District regarding reasonable rates for law clerks working on wage-and-hour litigation.  *Id.*, at *54 (citing *Ni*, 2016 WL 369681, at *7 (finding a law clerk's rate of $120/hour to be reasonable in an FLSA and NYLL case); *Guo v. Tommy's Sushi, Inc.*, No. 14cv3964 (PAE), 2016 WL 452319, at *5 (S.D.N.Y. Feb. 5, 2016) (reducing the requested rate of a "paralegal, interpreter, and law clerk" from $150 per hour to $100 per hour in an FSLA and NYLL case)).  In this case, Plaintiff has offered no information at all regarding Sanchez, and she is not currently listed as an attorney on the Faillace Firm's website.  Thus, apart from the representations made in the *Elisama* case, all this Court knows about Sanchez's level of experience is that she filed a notice of appearance in

---

[17] In *Elisama*, this Court recommended that Faillace's requested rate be reduced to $400 per hour, not because $450 would have been unreasonable, but because this Court had deduced from the invoice submitted in *Elisama* that Faillace had actually recorded his time using a rate of $400 per hour in that case.  *See* 2016 U.S. Dist. LEXIS 58833, at *54.

[18] See http://www.faillacelaw.com/our-attorneys/joshua-androphy/ (identifying Androphy as a "Senior Litigation Associate") (last visited Oct. 27, 2016).

this case on June 8, 2015, leading this Court to surmise that she may have been admitted to the bar shortly before that date. As an extremely junior attorney on the case, I recommend that Sanchez's hourly rate be reduced to $175 per hour. *See Guo*, 2016 WL 452319, at *5 (finding a rate of $175 reasonable for attorneys "admitted to the bar in or after 2013," "given the attorneys' recent admission to the bar and presumptively limited experience litigating FLSA cases" (collecting cases)).

In sum, based on the prevailing rates within this District, this Court recommends that, for purposes of calculating the lodestar, Faillace's requested rate of $450 per hour be approved as reasonable, but that the rate requested for Androphy be reduced to $300 per hour, and the rate requested for Sanchez be reduced to $175 per hour.

## B.    Reasonable Hours

In support of Plaintiff's request for attorneys' fees, counsel has provided the Court with copies of two so-called invoices, one of which, as noted above (*see* Procedural History, *supra*), omits certain time entries, purportedly to comply with Judge Caproni's admonition that Plaintiff should provide this Court with "revised documentation on attorneys fees that adjusts the requested fees to take into account counsel's repeated mistakes in effectuating service on the Defendants." (Dkt. 71; *see* Revised Proposed Findings ¶¶ 48-49.) The modified invoice appears to reflect attorney time records that were maintained contemporaneously during the course of the litigation, and shows the billable hours expended during this action. (Dkt. 75-4.) Most of the time entries describe reasonable tasks that appear to have been performed within a reasonable amount of time. (*See id.*)

Some of the recorded entries, however, should be excluded from any calculation of fees to be awarded on this inquest, or should be specifically reduced. There is no question that

Androphy's entry of .20 hours on October 15, 2015 should be excluded, as it contains no explanation at all of the work that was performed. (*See id.*) Further, Androphy's entry of .10 hours on April 28, 2015, and Sanchez's entry of .20 hours on January 7, 2016 should be entirely excluded, as both entries, on their face, reflect time incurred on tasks related solely to defendants who have been dismissed from this action. (*See id.* (time entry on Apr. 28, 2015, for "email . . . re Manuel Vidal status"; time entry on Jan. 7, 2016, for "Drafted and filed notice of voluntary dismissal for Jacinto Diaz"). For the same reason, I recommend that Androphy's entry of .30 hours for November 25, 2014 be reduced by two-thirds (to .10 hours), as the Docket of this case shows that this time entry, reflecting Androphy's drafting of certificates of default (*see id.*), correlated to Plaintiff's obtaining three certificates of default (Dkts. 10, 11, 12), two of which were for former defendants Vidal and Diaz (Dkts. 10, 11). Finally, Sanchez's time entry of 1.00 hours for May 13, 2015 should be excluded, as, based on its description ("Meeting with plaintiff . . . to prepare his declaration in support of the motion for default to be filed by May 22nd") (Dkt. 75-4), it evidently relates to counsel's preparation of the same default motion that Plaintiff claims to have now omitted from his fee submission on the ground that this was a default motion "against the [d]efendant Diaz, who had not been properly served." (Revised Proposed Findings ¶ 49.)

Further, even after these exclusions or reductions, the number of hours recorded by counsel as having been spent on this case should be subjected to at least a modest percentage reduction, for a number of reasons.

First, some of the work performed by Androphy, as a "senior" associate, and even by Faillace, as the supervising partner on the case, could and should have been performed by a more junior attorney with a lower billing rate, or even by a paralegal. For example, Faillace himself

apparently billed 1.80 hours (charging $810.00) for searching a "Corporation and Business Entity Database," presumably to gather basic information regarding the corporate defendant, Capri. (*See* Dkt. 75-4 (time entry for Sept. 25, 2014).) This was work that presumably could have been performed easily by a more junior attorney. Similarly problematic are the several entries by Androphy (and one by Faillace) that refer to the "filing" of documents. (*See id*. (Faillace time entry of Sept. 29, 2014; Androphy time entries of Nov. 12, 2014, Nov. 25, 2014, Jan. 30, 2015, and May 6, 2015).) Filing a document is plainly a task that could have been performed by a junior associate or paralegal, billing at a lower hourly rate. *See, e.g.*, *Lane Crawford LLC v. Kelex Trading (CA) Inc*., No. 12cv9190 (GBD) (AJP), 2013 WL 6481354, at *9 (S.D.N.Y. Dec. 3, 2013), *report and recommendation adopted*, 2014 WL 1338065 (Apr. 3, 2014) (finding a reduction in hours to be warranted where a task could have been performed by an associate or paralegal who billed at a lower rate).

Second, it is of additional concern that each of the time entries that describe the filing of documents are "block-billed" (*i.e.*, multiple tasks are clustered together in the same billing entry), preventing this Court from being able to ascertain how much time was spent on filing, and how much was spent on other tasks. (*See, e.g.*, *id.* (Faillace time entry of 2.5 hours for Sept. 29, 2014 ("Finalized and filed complaint – sdny"); Androphy time entry of .50 hours for Nov. 12, 2014 ("call with court; draft and file request for adjournment of initial conference"); Androphy time entry of 1.00 hours for May 6, 2015 ("draft and file joint status letter; meet with J. Sanchez re status, default judgment motion")).) While the practice of block billing "is not prohibited in this Circuit," *Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999); *see also, e.g.*, *Hutchinson v. McCabee*, No. 95cv5449 (JFK), 2001 WL 930842, at *4 (S.D.N.Y. Aug. 15, 2001), it is difficult for the Court to evaluate whether the time spent on a given task was

excessive where the attorney has grouped different tasks together in a single time entry. Thus, at times, courts have reduced or even disallowed requested attorneys' fees where the supporting time records were not broken out with sufficient detail to enable the courts to determine the reasonableness of the time spent on particular tasks. *See, e.g., Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (affirming hours reduction for pervasive block billing in time entries); *Bank v. Ho Seo,* No. 06cv15445 (LTS) (RLE), 2009 WL 5341672, at *5 (S.D.N.Y. Dec. 16, 2009) (reducing a fee award and noting that the process of combining "multiple tasks into one entry" blocks the court's "efforts to evaluate the reasonableness of any of the listed activities" (internal quotation marks and citation omitted)), *adopted as modified on other grounds,* 2010 WL 129681 (Jan. 13, 2010); *Soler v. G&U, Inc.*, 801 F. Supp. 1056, 1061-62 (S.D.N.Y. 1992) (excluding from lodestar calculation all time entries with commingled activities).

Third, while, in certain instances, this Court has been able to discern from the Docket whether the recorded hours likely related to work on the case against defaulting Defendants Capri and/or Rodriguez (as opposed to work performed with respect to other defendants), this is not entirely self-evident. In addition, this Court has not been able to determine, with certainty, whether any of the work reflected in the submitted attorney invoice was duplicative, as the result of initial mistakes made in the attempted service of process that Judge Caproni referenced in her Order of Judgment. (*See* Dkt. 71 (referring to such "repeated mistakes").)

Finally, the submitted invoice is unclear as to the extent to which counsel billed for travel time, in connection with their appearances in court. One of Androphy's time entries (1.20 hours on Feb. 27, 2015) explicitly states that the time incurred was to "attend *and travel to* initial conference." (Dkt. 75-4 (emphasis added).) Others of counsels' time entries, though, do not

specify whether travel time was included (*see, e.g.*, Androphy time entry of 1.20 hours on Feb. 6, 2015 ("attend pretrial conference"); Androphy's time entry of 1.00 hours on Oct. 16, 2015 ("prepare for and attend status conference"); Sanchez's time entry of 1.50 hours on Jan. 29, 2016 ("Prepared for and attended show cause hearing.  Defendants did not appear and default was granted.")), but given the similarity of the amount of time reported for these appearances to the time shown in Androphy's February 27, 2015 entry, and the likelihood that these conferences did not typically run for an hour or more – especially where Defendants did not appear – it seems likely that these entries *do* include time for attorney travel.  Typically, in fee awards, attorney travel time is only compensated at 50 percent of the attorney's reasonable billing rate.  *Siegel v. Bloomberg L.P.*, No. 13cv1351 (DF), 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016) (collecting cases and noting that applying a 50 percent reduction to hourly rates for travel time is the "customary practice in this District").

In light of these billing issues, which are notable, but not pervasive, this Court recommends that, after the exclusions and reductions set out above, an across-the-board reduction of five percent be applied to the hours reportedly billed by Plaintiff's counsel.  *See Carey*, 711 F.2d at 1142, 1146 (noting that a percentage reduction may be applied as a "practical means of trimming fat" from a fee application).  This would result in an overall reduction of counsel's time from 24.35 hours (as shown in Dkt. 75-4) to 21.52 hours, which this Court finds reasonable.

## C.  Lodestar Calculation

Using the reasonable rates and hours described above would result in the following

lodestar calculation:

| Attorney | Hourly Rate (as recommended by this Court) | Hours Billed (omitting certain time, with the remainder reduced by 5%) | Total | |
|---|---|---|---|---|
| Faillace | $450.00 | 9.36 | $4,212.00 | |
| Androphy | $300.00 | 7.41 | $2,223.00 | |
| Sanchez | $175.00 | 4.75 | $  831.25 | |
| | | | **Total** | $7,266.25 |

This Court finds no exceptional circumstances here that would warrant deviation from the

lodestar, *see Perdue*, 559 U.S. at 552, and therefore recommends that Plaintiff be awarded

attorneys' fees in the amount of $7,266.25.

## D.  Costs

Plaintiff additionally seeks litigation costs, in the amount of $625.00, including a

$400.00 filing fee, and three separate $75.00 process-server fees.  (Dkt. 75-4.)  This Court finds

the filing fee to be compensable, *see Guo*, 2016 WL 452319, at *7, but recommends that the

process-server fees not be awarded.  First, apart from its own "invoice," itemizing these fees, the

Faillace Firm has failed to submit any underlying documentation supporting that the fees were

incurred.  Second, without such documentation, this Court is unable to assess whether the stated

fees were incurred for service of process on either of the defendants whose claims have been

dismissed; similarly, this Court cannot determine if those fees relate to what Judge Caproni noted

were "counsel's repeated mistakes in effectuating service on the Defendants."  (Dkt. 71.)  It is

Plaintiff's burden to demonstrate that the litigation costs sought were reasonably incurred and are

properly recoverable from the defaulting Defendants, and Plaintiff simply has not met this

burden with respect to his request for compensation for process-server fees. I therefore recommend that only $400.00 in costs be awarded.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that upon their default, Defendants 1342 St. Nicholas Avenue Restaurant Corp. (d/b/a Capri Restaurant) and Pipe Rodriguez be held jointly and severally liable for:

1. Damages in the amount of $48,283, representing:

    a. $21,641.50 in unpaid wages;

    b. $21,641.50 in liquidated damages under the NYLL; and

    c. $5,000.00 in statutory damages under the NYLL;

2. Prejudgment interest in the amount of:

    a. $4,557.17 up to March 9, 2016 (the date that Plaintiff filed his Revised Proposed Findings); and

    b. additional prejudgment interest at the rate of nine percent per annum on the principal amount of $26,198.67, to be calculated by the Clerk of Court from March 10, 2016 to the date of entry of final judgment;

3. Attorneys' fees in the amount of $7,266.25; and

4. Costs in the amount of $400.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Valerie E. Caproni, United States Courthouse, 40 Foley Square, Room 240, New York, New York, 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York

10007.  Any requests for an extension of time for filing objections must be directed to

Judge Caproni.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL

RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.

*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d

1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992);

*Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234,

237-38 (2d Cir. 1983).

  If Defendant Rodriguez does not have access to cases cited herein that are reported only

on Lexis or Westlaw, he may request copies from Plaintiff's counsel.  *See* Local Civ. R. 7.2

("Upon request, counsel shall provide the *pro se* litigant with copies of [cases and other

authorities that are unpublished or reported exclusively on computerized databases that are] cited

in a decision of the Court and were not previously cited by any party[.]").

Dated: New York, New York
   November 7, 2016

        Respectfully submitted,

        DEBRA FREEMAN
        United States Magistrate Judge

Copies to:

Plaintiff's Counsel (via ECF)

1342 St. Nicholas Avenue Restaurant Corp.
1342 St. Nicholas Avenue
New York, NY 10033

Mr. Pipe Rodriguez
1342 St. Nicholas Avenue Restaurant Corp.
1342 St. Nicholas Avenue
New York, NY 10033